UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIENT EXPRESS CONTAINER CO., LTD.,

Plaintiff,

-against-

RAD-SOLUTIONS, LLC,

Defendant.

Case No. 1:25-cv-10293 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Orient Express Container Co., Ltd. ("Plaintiff" or "OEC") brings this action against Defendant Rad-Solutions, LLC ("Defendant" or "Rad") for indemnification and/or contribution, negligence, and declaratory judgment.[1] *See generally* Dkt. 4 ("AC" or the "Amended Verified Complaint"). Now before the Court is Defendant's motion to dismiss the Amended Verified Complaint in its entirety for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2) and for failure to state a claim on which relief can be granted under Rule 12(b)(6). Dkt. 14. For the following reasons, Defendant's motion to dismiss is GRANTED for lack of personal jurisdiction.

## BACKGROUND

### I. Factual Background

Unless otherwise noted, the following facts are taken from the Amended Verified Complaint and accepted as true for purposes of the motion to dismiss. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024).

[1] On July 21, 2026, Plaintiff voluntarily dismissed its claims against then-Defendant Organic Material Solutions Co., Ltd. ("Organic"). Dkt. 35.

### A. The Parties and Relevant Entities

Plaintiff OEC is a non-vessel operating carrier ("NVOCC"). AC ¶ 3. OEC is a foreign corporation organized and existing under the laws of Taiwan, with its principal place of business in Taipei, Taiwan, *id.* ¶ 2, that is authorized and registered to do business under the laws of New York, *id.* ¶ 3. As an NVOCC, OEC is an intermediary that organizes shipments on behalf of its respective customers, arranging for transportation of their goods from one location to another. *Id.* ¶¶ 6-7. Because OEC is an NVOCC, it must contract with a vessel-owning common carrier ("VOCC") to physically transport goods upon the oceans. *Id.* ¶ 7. CMA CGM S.A. ("CMA") is a VOCC that time chartered the vessel M/V Ever Mist from Evergreen Marine Corp. (Taiwan) Ltd. ("Evergreen"). *Id.* ¶¶ 7-9. Former defendant Organic, which has been dismissed from the case, is a foreign corporation with its principal place of business in Taipei, Taiwan. *Id.* ¶ 4. Defendant Rad is a corporation organized and existing under the laws of Delaware with its principal place of business in Texas. *Id.* ¶ 5; Dkt. 15 ("Bognar Decl.") ¶ 2.[2]

### B. The Seaway Bills

In June 2024, Rad purchased goods from Organic on "Delivered Duty Paid" ("DDP") terms. Bognar Decl. ¶¶ 6, 9.[3] Under DDP terms, Organic was responsible for arranging the

---

[2] The Amended Verified Complaint incorrectly provides that Rad is a Texas corporation, AC ¶ 5, but Rad corrects this in the Bognar Declaration, *see* Bognar Decl. ¶ 2.

[3] "In deciding a motion to dismiss for lack of personal jurisdiction, it is proper for a court to rely on affidavits to establish jurisdictional facts." *Ariel Mar. Grp., Inc. v. Pellerin Milnor Corp.*, No. 88-cv-06447 (PKL), 1989 WL 31665, at *2 n.4 (S.D.N.Y. Mar. 29, 1989) (citation omitted); *accord Gosain v. State Bank of India*, 689 F. Supp. 2d 571, 578 (S.D.N.Y. 2010) (citing *Ariel*, 1989 WL 31665, at *2 n.4), *aff'd in part, vacated in part on other grounds, remanded*, 414 F. App'x 311 (2d Cir. 2011) (summary order); *City of New York v. Old Dominion Tobacco Co.*, No. 20-cv-05965 (ENV) (RER), 2023 WL 12027901, at *1 n.1 (E.D.N.Y. Sept. 12, 2023) ("For the purpose of determining the Court's jurisdiction under Rule 12(b)(2), extrinsic facts established through plaintiff's declarations are also considered." (citing *Whitaker v. Am. Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001))).

transportation of the goods from Taiwan to North Carolina, as well as for paying the carriers' freight charges and the duties imposed on the goods. *Id.* ¶ 9. On or about July 12, 2024, Organic contracted with OEC to carry one container containing resin (the "Cargo") from Keelung, Taiwan to Salisbury, North Carolina, via Savannah, Georgia, where it was to be delivered to Organic's customer, Rad. AC ¶ 10. Thereafter, OEC contracted with CMA to use the vessel M/V Ever Mist. *See id.* ¶¶ 9, 12. On or about July 24, 2024, OEC issued seaway bill #OERT101702N01263 (the "Bill of Lading") to Organic as the Shipper and Rad as Consignee for the carriage of the Cargo from Keelung, Taiwan to Salisbury, North Carolina. *Id.* ¶ 11. On July 24, 2024, CMA issued seaway bill #TWN0883184 to OEC as the Shipper and OEC Freight (NY) Inc. as Consignee for carriage of the Cargo from Keelung, Taiwan to Savannah, Georgia. *Id.* ¶ 12. The Bill of Lading provides that the definition of "Merchant" includes "the shipper, consignee, receiver, holder of th[e] Bill of Lading, owner of the cargo or person entitled to the possession of the cargo and their principals and the[ir] servants and agents." Dkt. 22 ("Klobus Decl."), Ex. A at 1. The Bill of Lading also provides that "[a]ll disputes of whatsoever nature under or in connection with this Bill of Lading shall be determined by the United States District Court for the Southern District of New York to the exclusion of any other court." *Id.* at 15.

**C. The Incident**

On July 28, 2024, while en route to Panama, the Cargo was found to be leaking in the hold of the M/V Ever Mist, thereby creating an unsafe and unseaworthy condition aboard the vessel. AC ¶ 13. It turned out that a tank of the Cargo was improperly secured within its container and punctured, causing the Cargo to leak into the hold. *Id.* ¶ 14. Shortly thereafter, Evergreen arranged to clean the leaking Cargo from the hold in Panama, *id.* ¶ 15, and Organic and Rad were notified, *see id.* ¶ 17.

### D. Claims From the Incident

On September 5, 2024, Evergreen notified OEC that the costs to remediate the damage caused by the leaking Cargo totaled $344,980.00. *Id.* ¶ 16. The same day, OEC sent Organic a "Formal Claim Notice" detailing the loss aboard the vessel and demanding reimbursement for the total costs incurred. *Id.* ¶ 17. On October 9, 2024, OEC notified Organic and Rad of the claims from Evergreen against CMA, and by CMA against OEC, and requested that Organic and Rad assume responsibility for any liability arising from the Cargo leak pursuant to the terms of the OEC Bill of Lading. *Id.* ¶ 20. Evergreen submitted its claim for reimbursement to CMA, and on May 5, 2025, CMA and Evergreen settled the dispute for $280,000.00. *Id.* ¶ 18. CMA has pursued its claim for reimbursement against OEC in the courts of Taiwan. *Id.* ¶ 19. On July 30, 2025, OEC issued a "Notice of Vouching In" to Organic and Rad, calling on them to assume the defense of OEC to the claims asserted by CMA in Taiwan. *Id.* ¶ 21. Rad has not appeared or accepted the defense. *Id.*

## II. Procedural History

On December 11, 2025, OEC initiated this action and filed its initial complaint against Organic and Rad. *See* Dkt. 1. OEC amended its complaint on December 12, 2025. *See* AC. On March 9, 2026, OEC requested additional time to serve Rad, Dkt. 11, which the Court granted on March 10, 2026, Dkt. 12. On May 5, 2026, Rad filed its motion to dismiss the AC. Dkt. 14; Bognar Decl.; Dkt. 16 ("Br."). On May 14, 2026, OEC requested an extension of time to oppose Rad's motion to dismiss, Dkt. 17, which the Court granted, Dkt. 18. On June 1, 2026, OEC requested a second extension of time to oppose Rad's motion, Dkt. 19, which the Court granted, Dkt. 20. OEC opposed Rad's motion to dismiss on June 9, 2026. Dkt. 21 ("Opp."); Klobus Decl.; Dkt. 23 ("Tisdale Decl."). Rad filed its reply on June 19, 2026. Dkt. 28 ("Reply"). The motion is fully briefed.

## LEGAL STANDARD

### I. Rule 12(b)(2)

"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Edwardo v. Roman Cath. Bishop*, 66 F.4th 69, 73 (2d Cir. 2023) (quoting *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 167-68 (2d Cir. 2015)); *see also Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) ("A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010))). The manner of this showing "varies depending on the procedural posture of the litigation." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball*, 902 F.2d at 197). The court "accept[s] as true all factual claims in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 125 (2d Cir. 2023) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam)). But "where a conclusory allegation . . . is contradicted by" a properly considered document, "the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam); *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

### II. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). The Court accepts as true all non-conclusory allegations of fact and "draw[s] all reasonable inferences in the [nonmovant]'s favor." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016)). But the Court need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[T]he court's task is to assess the legal feasibility of the [allegations]; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

## DISCUSSION

Rad moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), *see* Br. at 6-17, as well as for failure to state a claim under Rule 12(b)(6), *see id.* at 17-26. "When a defendant moves to dismiss under Rules 12(b)(2) and 12(b)(6), the court must resolve the Rule 12(b)(2) motion first." *Suarez v. Cal. Nat. Living, Inc.*, No. 17-cv-09847 (VB), 2019 WL 1046662, at *3 (S.D.N.Y. Mar. 5, 2019); *accord Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). Because the Court finds that it lacks personal jurisdiction over Rad, it need not reach Rad's motion to dismiss under Rule 12(b)(6).

### I. The Court Does Not Have Personal Jurisdiction over Rad

"[B]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). For example, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964).

Where this is not the case, "[i]n general, three requirements must be satisfied before a district court may lawfully exercise personal jurisdiction over a party: (1) 'the plaintiff's service

of process upon the defendant must have been procedurally proper'; (2) 'there must be a statutory basis for personal jurisdiction that renders such service of process effective'; and (3) 'the exercise of personal jurisdiction must comport with constitutional due process principles.'" *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 68-69 (2d Cir. 2022) (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016)). District courts deciding 12(b)(2) motions typically collapse those requirements into a two-part analysis. *See, e.g.*, *O'Reilly v. TP ICAP Glob. Mkts. Ams. LLC*, No. 24-cv-05913 (KPF), 2025 WL 2773284, at *6 (S.D.N.Y. Sept. 29, 2025) ("A district court deciding a motion to dismiss for lack of personal jurisdiction engages in a two-part analysis."); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (same). "First, the court must establish whether there is 'a statutory basis for exercising personal jurisdiction.'" *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 86 (S.D.N.Y. 2021) (alteration adopted) (italicization omitted) (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013)). "[T]he law of the forum state — here, New York — governs the issue of personal jurisdiction in admiralty cases." *Shipco Transp., Inc. v. Roll on Roll off Co.*, 684 F. Supp. 3d 156, 163 (S.D.N.Y. 2023) (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 (2d Cir. 1991)).

If there is a statutory basis, then "the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe*, 616 F.3d at 164; *accord Murray Eng'g P.C. v. Remke*, No. 17-cv-06267 (KPF), 2018 WL 3773991, at *3 (S.D.N.Y. Aug. 9, 2018). "The due process analysis consists of two prongs: the minimum contacts inquiry and the reasonableness inquiry." *GE Renewables N. Am., LLC v. SFK USA Inc.*, No. 23-cv-09274 (PKC), 2025 WL 437890, at *4 (S.D.N.Y. Feb. 7, 2025). "[A]nalysis of minimum contacts requires 'evaluation of the quality and nature of the

defendant's contacts with the forum state under a totality of the circumstances test.'" *Kumar v. Opera Sols. OPCO, LLC*, No. 20-cv-06824 (GHW), 2021 WL 4442832, at *10 (S.D.N.Y. Sept. 28, 2021) (alterations adopted) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)). "[O]nce minimum contacts are established, a court considers those contacts 'in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018) (quoting *Licci*, 732 F.3d at 170). If the Court concludes that it has jurisdiction, it may then turn to the merits. *See Cavanaugh v. Northwell Health, Inc.*, No. 21-cv-01381 (EK) (ARL), 2025 WL 904314, at *5 (E.D.N.Y. Mar. 24, 2025) ("Having concluded that there is no jurisdictional impediment to doing so, the Court now proceeds to the merits.").

Rad argues that OEC has not met its burden to demonstrate that the Court has personal jurisdiction over it for three reasons. First, Rad argues that the "Amended Verified Complaint is devoid of any factual allegations" to support general or specific jurisdiction over it. Br. at 6; *see also id.* at 7-9. Second, Rad contends that it has not consented to the Court's jurisdiction merely because it was named by Organic as the intended consignee of the Cargo under the Bill of Lading, which contains a forum selection clause designating the Southern District of New York. *Id.* at 6; *see also id.* at 9-15. Third, Rad argues that the exercise of personal jurisdiction over it would not comport with due process. *Id.* at 6-7; *see also id.* at 15-17.

OEC does not engage with Rad's arguments regarding specific and general jurisdiction and instead responds that "[t]he terms of OEC's bills of lading provide the basis for th[e] Court's exercise of personal jurisdiction over Rad." Opp. at 1. Specifically, OEC argues that Rad consented to jurisdiction through the "Merchants" and "Jurisdiction" clauses of the Bill of Lading, "which Rad received and accepted, or to which it exhibited acceptance." *Id.* at 7; *see*

*also id.* at 8-13. OEC further contends that Rad is bound by the Bill of Lading's forum selection clause because it "is bound to the terms of carriage to which its agent, Organic, agreed." *Id.* at 7; *see also id.* at 13-15.

For the reasons below, the Court finds that Rad did not consent to the personal jurisdiction of this Court via consent to the Bill of Lading's forum-selection clause. The Court also finds that OEC has not pleaded an agency relationship between Rad and Organic that would otherwise subject Rad to the Bill of Lading's forum-selection clause. Finally, OEC has not pleaded facts that support general or specific jurisdiction under New York's Civil Practice Law and Rules ("CPLR").

**A. Rad Did Not Consent to Personal Jurisdiction**

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *see also Nat'l Equip. Rental*, 375 U.S. at 316 ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court."). For cases in admiralty, "federal law governs the enforceability of the forum-selection clause." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991). While forum-selection clauses are regularly enforced as *prima facie* valid, several conditions must be met. *D.H. Blair*, 462 F.3d at 103 (citing *Shute*, 499 U.S. at 590-91); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). In the Second Circuit, a "party seeking enforcement of a forum selection clause must demonstrate that: '(1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause.'" *Tropp v. Corp. of Lloyd's*, 385 F. App'x 36, 37 (2d Cir. 2010) (summary order) (quoting *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009)); *accord Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir.

2007). After these conditions are established, "the burden shifts to the party resisting enforcement to rebut the presumption of enforceability by 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Altvater*, 572 F.3d at 89 (quoting *Phillips*, 494 F.3d at 383-84).

"Although sea waybills or bills of lading are contracts between a shipper and a carrier, 'there is ample precedent for binding a consignee' to these contracts under the theory that the non-signatory consignee accepted their terms." *APL Co. Pte. v. Kemira Water Sols., Inc.*, 890 F. Supp. 2d 360, 366 (S.D.N.Y. 2012) (quoting *Taisheng Int'l Ltd. v. Eagle Mar. Servs., Inc.*, No. Civ. A. H–05–1920, 2006 WL 846380, at *3 (S.D. Tex. Mar. 30, 2006) (collecting cases)). With respect to whether the terms of a bill of lading bind a third party — such as a consignee — common law third-party beneficiary principles are instructive. *See In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 72 (S.D.N.Y. 2009), *opinion adhered to on reconsideration*, 643 F. Supp. 2d 553 (S.D.N.Y. 2009), and *aff'd sub nom. Chem One, Ltd. v. M/V RICKMERS GENOA*, 502 F. App'x 66 (2d Cir. 2012) (summary order). For example, "to the extent a third-party qualifies as an intended beneficiary, it may enforce contract terms in its favor." *Id.* "However, qualifying as an intended beneficiary in no way *creates* contractual obligations on the part of the intended beneficiary." *Id.*; *see also Stein Hall & Co. v. S. S. Concordia Viking*, 494 F.2d 287, 291 (2d Cir. 1974) ("While the carrier and the shipper can extend certain contractual protections, such as the limitation on damages, to stevedores as third-party beneficiaries, they cannot contract to bind an unconsenting third party." (citing *Bernard Screen Printing Corp. v. Meyer Line*, 464 F.2d 934 (2d Cir. 1972) (per curiam))).

Thus, a consignee is not bound by the terms of a bill of lading unless it consents to be bound. *Rickmers*, 622 F. Supp. 2d at 71; *accord Stein Hall*, 494 F.2d at 291 ("The stevedore is not a party to the bills of lading and is not bound by their terms unless it contracts to be so.").

Or, stated differently, "a party cannot unilaterally employ definitions to bind another party to . . . provisions to which the other party has not consented to be bound." *Rickmers*, 622 F. Supp. 2d at 71 (quoting *United States v. Waterman S.S. Corp.*, 471 F.2d 186, 189 n.4 (5th Cir. 1973)) (alterations adopted); *see also APL*, 890 F. Supp. 2d at 366 ("As a general matter, a party cannot unilaterally bind another party to a contract by capturing them within a term defined in that contract."). "[T]he two primary methods for actually binding an intended beneficiary to a bill of lading are showing that the third party exhibited acceptance to be so bound and through an agency relationship with one of the contracting parties. Absent such a showing, contractual obligations cannot be imposed on an intended beneficiary." *Rickmers*, 622 F. Supp. 2d at 72 (citation omitted); *see also Excel Shipping Corp. v. Seatrain Int'l S.A.*, 584 F. Supp. 734, 748 (E.D.N.Y. 1984) ("To enforce the bill of lading provisions against [the consignee] here . . . would have the anomalous result of creating a greater scope of liability for a consignee having no active participation in the shipment of goods than for the shipper itself.").

Because Rad is a non-signatory consignee to the contract between OEC and Organic, for Rad to be bound by OEC's Bill of Lading's forum-selection clause, Plaintiff must demonstrate that Rad consented to be bound either through its course of conduct or based on an agency relationship with Organic. Neither has been shown here.

*1. Rad Did Not Exhibit Acceptance to be Bound by OEC's Bill of Lading through the Parties' Course of Conduct*

OEC principally argues that Rad accepted the terms of the Bill of Lading through its course of conduct and silent assent to the terms. *See* Opp. at 11. Specifically, OEC argues that Rad knew that a bill of lading would issue for the Cargo since Rad had "received dozens of OEC bills of lading for other shipments it received from Organic." *Id.* From July 24, 2023, to July 24, 2024 — the date of the Bill of Lading at issue — Rad has been the consignee on 24 OEC bills of

lading for the carriage of 26 containers. Klobus Decl. ¶ 6. In each of these 24 instances, the shipper of Rad's cargo was Organic. *Id.* OEC contends that on the face of each of these bills of lading there were "numerous references to terms on the reverse side" and each "contained references to the website where the terms could also be found." Opp. at 11 (citing Klobus Decl. ¶ 7).

"Where a party does not explicitly accept the terms of a contract, its course of conduct may still evidence acceptance." *APL*, 890 F. Supp. 2d at 366 (citing Restatement (Second) of Contracts § 69(1)(c)). "Evidence of a prior course of dealing may establish a party's awareness of and consent to intended contractual terms." *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997) (citing Restatement (Second) of Contracts § 223 (1979)). "Typically, a course of dealings analysis focuses on the actions of the parties with respect to a specific issue that the parties may have encountered before." *Id.*; *accord CMA CGM (Am.) L.L.C. v. Seafood Expert W. Inc.*, No. 13-cv-02839 (VSB), 2015 WL 1564996, at *8 (S.D.N.Y. Mar. 31, 2015); *MTS Logistics, Inc. v. Innovative Commodities Grp.*, LLC, 442 F. Supp. 3d 738, 749 (S.D.N.Y. 2020). "Course of conduct can include 'evidence that a party has ratified terms by failing to object.' However, ratification accrues only pursuant to a 'well-established custom' repeated in 'numerous purchases over a period of time.'" *CMA*, 2015 WL 1564996, at *8 (quoting *New Moon*, 121 F.3d at 31).

OEC did not reasonably communicate its Bill of Lading terms to Rad such that Rad's silence exhibited acceptance. OEC "relies on the general fact of the prior dealings, but does not take the extra step of showing that [Rad] was aware of the terms . . . in its . . . Bill of Lading or had seen those terms at any point, let alone on numerous occasions." *MTS Logistics*, 442 F. Supp. 3d at 750. Because Rad purchased goods from Organic on DDP terms, Organic was responsible for arranging carriage and paying both duty and freight to import the goods. Bognar

Decl. ¶ 9. As a result, it was Organic's choice to contract with OEC for shipping, and Rad had no input into OEC's selection nor the terms of OEC's bills of lading. *Id.* ¶¶ 12-13. OEC contracted with Organic, not Rad. AC ¶ 10. Thus, for Rad to be aware of the terms in OEC's Bill of Lading, OEC must have either provided Rad with a copy of those terms or relied on Organic to provide Rad with a copy of the terms.

OEC does not contend that it provided Rad with a copy of any of the bills of lading's terms, including the Bill of Lading at issue. *See* Reply at 3. Rather, OEC seems to assume that Rad received the bills of lading and their terms from Organic. But Organic has never provided a copy of OEC's bill of lading terms to Rad in connection with any shipment, and OEC does not allege otherwise. Bognar Decl. ¶ 13. With respect to the Bill of Lading at issue, Organic provided an electronic copy to Rad without any of the appended terms only after OEC notified Organic and Rad of the leak. *Id.*

Even if Organic had provided Rad with the Bill of Lading's terms, OEC's contention that the bills had "numerous references to terms on the reverse side" and each "contained references to the website where the terms could also be found" is insufficient to provide the requisite notice. Opp. at 11 (citing Klobus Decl. ¶ 7). "That such terms can be found on the website alone does not constitute reasonable communication." *MTS Logistics*, 442 F. Supp. 3d at 751 (finding no constructive notice where plaintiff employee told defendant that it can visit their website for more details); *Motise v. Am. Online, Inc.*, 346 F. Supp. 2d 563, 564-65 & n.1 (S.D.N.Y. 2004) (finding no constructive notice where terms were available on a different part of the website). This is especially so where Rad had no reason, given its DDP contract with Organic, to monitor the terms of Organic's chosen transporter. Nor is OEC's reliance on a different document, an Arrival Notice, persuasive, as this notice does not state that Rad was bound by the terms of the

Bill of Lading. Therefore, OEC did not reasonably communicate the terms of its Bill of Lading to Rad such that Rad's silence constituted acceptance and consent to be bound.

Finally, OEC contends that Rad relied on the OEC bills of lading in its purchase agreement with Organic because the Purchase Order and Commercial Invoice referred to the Bill of Lading date to determine when credit for the sale began to run, specifically the references to "F/BL." Opp. at 11; *see* Bognar Decl., Exs. A & B. But OEC does not explain how, or provide support for, the proposition that a reference to the Bill of Lading for the payment term would put Rad on notice of the overall terms including a forum-selection clause. Because "the reference to charges occurring 'per bill of lading' is not specific — [and] it does not make clear which bill of lading it is referencing," the Court finds this is also insufficient to put Rad on notice of the Bill of Lading's forum selection clause terms. *MTS Logistics*, 442 F. Supp. 3d at 750.

For all of these reasons, the course of conduct between OEC and Rad is not sufficient to demonstrate that consignee Rad accepted the forum selection clause in the Bill of Lading between Organic and OEC.

*2. Organic is Not an Agent of Rad*

OEC has also failed to show that Rad is bound to the terms of the Bill of Lading based on an agency relationship with Organic. Courts in this Circuit have looked to the Restatement (Second) of Agency in specifying the contours of federal maritime common law agency principles. *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 329 (S.D.N.Y. 2009), *aff'd sub nom. Maersk, Inc. v. Sahni*, 450 F. App'x 3 (2d Cir. 2011) (summary order). "A basic principle of agency law is that an agency relationship exists only if the agent is acting on behalf of and subject to the control of the principal." *APL*, 890 F. Supp. 2d at 369 (quoting *Neewra*, 687 F. Supp. 2d at 329); *accord Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 280 (6th

Cir. 2021). "A principal has the power to control the agent's conduct regarding matters entrusted to the agent." *Rickmers*, 622 F. Supp. 2d at 74 (citing Restatement (Second) of Agency § 14).

"[T]he general rule is that a party who procures shipment for the ultimate benefit of a consignee does not thereby contract with the carrier as agent of the consignee." *Id.* at 73 n.23 (quoting Julian Cooke et al., Voyage Charters § 18.77 (3d ed. 2007)); *see also APL*, 890 F. Supp. 2d at 369 ("A mere contract to ship goods does not establish an agency relationship." (quoting *Pro. Commc'ns, Inc. v. Cont. Freighters, Inc.*, 171 F. Supp. 2d 546, 551 (D. Md. 2001))). "Agency is only to be assumed" in the "limited context" where intermediaries, such as NVOCCs, are acting as agents for shippers. *Rickmers*, 622 F. Supp. 2d at 73 n.23. But this "assumption does not extend to consignor/consignee relationships." *Id.* Otherwise, "the notion that consignors and consignees can be assumed to be in a principal/agent relationship would expose consignees to potentially limitless liability for the conduct and contracts of their consignors." *Id.* "Rather, agency theories of liability must be considered on a case-by-case basis and should not be assumed." *Id.*

OEC's allegations that Organic acted as Rad's agent are unpersuasive and insufficient to establish personal jurisdiction. First, OEC alleges only that Rad was Organic's customer. AC ¶ 10; *see generally id.* In its opposition brief, OEC speculates that "[q]uestions exist about the full nature and extent of Organic's relationship with Rad," Opp. at 14; OEC "knows only the extent of the Organic/Rad business insofar as OEC's services were utilized," *id.* at 13; and "OEC has no idea what other business Organic/Rad had with other carriers, all of which would evidence the agency relationship between the two companies," *id.* But OEC has now received a declaration from Rad's managing member regarding the contours of Rad's relationship with Organic, *see* Bognar Decl. ¶ 6 ("Rad and Organic are not affiliated or related in any way; they are separate companies and are not under common ownership, whether directly or indirectly.");

*id.* ¶ 7 ("Rad has never authorized Organic to act or to hold itself out as Rad's agent, whether for sourcing products, arranging transportation, or otherwise. The relationship between Rad (as buyer) and Organic (as seller) is purely transactional. Likewise, Rad has never authorized Organic to contract with an ocean or inland carrier on Rad's behalf."), and OEC does not counter *any* of the facts provided by Rad that speak to the *lack* of an agency relationship. Therefore, OEC has not met its burden in demonstrating that the Court has personal jurisdiction over Rad based on Organic's alleged agency relationship with Rad.

* * *

Because OEC has not demonstrated that Rad exhibited acceptance of the terms of OEC's Bill of Lading, nor that Organic acted as Rad's agent, OEC has not shown that Rad consented to be bound to the Bill of Lading's forum-selection clause. Thus, the Court does not have personal jurisdiction over Rad based on the terms of the Bill of Lading.

**B. The Court Does Not Have Personal Jurisdiction under New York's CPLR**

The Court next analyzes whether it has general or specific jurisdiction over Rad, even though OEC does not rely on these grounds for asserting personal jurisdiction. *See MTS Logistics*, 442 F. Supp. 3d at 754; Opp. at 1.

OEC has invoked the Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333. *See* 28 U.S.C. § 1333. "In admiralty cases, the law of the forum state covers whether a party is subject to personal jurisdiction." *Stemcor USA v. Hyundai Merch. Marine Co.*, 386 F. Supp. 2d 229 (S.D.N.Y. 2005) (citing *Klinghoffer*, 937 F.2d at 50). Therefore, New York law applies. *See Stemcor*, 386 F. Supp. 2d at 233; *accord Klinghoffer*, 937 F.2d at 50.

New York CPLR Section 301 "confers jurisdiction where a company 'has engaged in such a continuous and systematic course of "doing business" [in New York] that a finding of its "presence" [in New York] is warranted.'" *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750

F.3d 221, 224 (2d Cir. 2014) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 565 N.E.2d 488, 490 (1990)); N.Y. C.P.L.R. § 301. "[T]he paradigm forum for the exercise of general jurisdiction" for a corporate entity includes "domicile, place of incorporation, and principal place of business." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

OEC has not established personal jurisdiction under New York CPLR § 301. Rad is a two-member limited liability company formed under Delaware law with its principal place of business and mailing address in Texas. Bognar Decl. ¶ 2. Rad does not maintain any offices, employees, or bank accounts in New York. *Id.* ¶ 4. It is not registered with the New York Department of State to conduct business within the State of New York as a foreign limited liability company. *Id.* ¶ 5. OEC offers no countervailing facts and thus, this Court does not have general jurisdiction over Rad.

OEC also has not established specific jurisdiction over Rad under New York CPLR § 302(a). New York's long-arm statute provides that:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state . . . ; or 3. commits a tortious act without the state causing injury to person or property within the state . . . , if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y. C.P.L.R. § 302(a)(1)-(3) (McKinney 2026).

OEC alleges that Organic contracted with OEC to carry the Cargo from Taiwan to North Carolina via Georgia. AC ¶ 10. OEC also alleges that the Cargo leak occurred aboard a vessel in the middle of the Pacific Ocean, which was then remediated in Panama. *See id.* ¶¶ 13-15. But

OEC does not allege that Rad had anything to do with the way the Cargo was secured in the vessel. *See id.* ¶ 14. OEC also does not allege any facts showing that Rad transacted any business in New York or committed any tortious acts in the state. *See generally* AC. Nor does OEC allege that Rad regularly engages in business in New York or that Rad "expects or should reasonably expect" its actions to have consequences in New York. Therefore, OEC fails to allege that this Court has specific jurisdiction over Rad under New York's long-arm statute. Thus, the Court need not — and does not — consider Rad's arguments regarding whether exercising jurisdiction over Rad would comport with Due Process.

For all of these reasons, OEC has failed to make a *prima facie* showing that this Court has personal jurisdiction over Rad.

## II. Plaintiff's Request for Jurisdictional Discovery

OEC requests that it be "permitted to engage in jurisdictional discovery to uncover the full facts about the relationship between Rad and Organic as well as the facts surrounding Rad's exhibited acceptance of the bill of lading . . . and whatever other acts may exhibit acceptance of the bill of lading[]." Opp. at 17. The Court denies Plaintiff's request.

"Courts have allowed jurisdictional discovery after 'a plaintiff has made a threshold showing for some basis to assert jurisdiction, such as facts that would support a colorable claim of jurisdiction.'" *Dorilton Cap. Mgmt. LLC v. Stilus LLC*, No. 23-cv-03789 (JLR), 2023 WL 3956180, at *2 (S.D.N.Y. May 15, 2023) (quoting *Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr., LLC*, No. 20-cv-00731 (PAE), 2020 WL 7711629, at *3 (S.D.N.Y. Dec. 29, 2020)). "If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the existence of jurisdiction." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207-08 (2d Cir. 2003) (per curiam)). "A

district court has wide latitude to determine the scope of discovery, and is typically within its discretion to deny jurisdictional discovery when the plaintiff has not made out a prima facie case for jurisdiction." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 133 n.6 (2d Cir. 2022) (citation modified); *accord 79th Grp., Inc. v. Moore*, No. 23-cv-02521 (JLR), 2024 WL 36992, at *14 (S.D.N.Y. Jan. 3, 2024).

"[E]ven accepting all of [OEC's] allegations as true, as a matter of law, [it] ha[s] not made a *prima facie* showing" that this Court has personal jurisdiction over Rad. *Daou*, 42 F.4th at 133 n.6; *see also* Sections I.A-B, *supra*. Further, "no factual dispute needs to be resolved in order to determine whether th[is] . . . [C]ourt ha[s] personal jurisdiction over [Rad]." *Daou*, 42 F.4th at 133 n.6; *see also Daventree*, 349 F. Supp. 2d at 761 (providing jurisdictional discovery is appropriate where "a plaintiff has identified a genuine issue of jurisdictional fact"). Even though OEC conclusorily seeks "to uncover the full facts about the relationship between Rad and Organic," Opp. at 17, "[j]urisdictional discovery is not warranted where [a] defendant 'submits an affidavit that provides all the necessary facts and answers all the questions regarding jurisdiction,'" *Nixon v. Inquisitr Ltd.*, No. 20-cv-01819 (JS) (SIL), 2021 WL 3667154, at *6 (E.D.N.Y. Aug. 17, 2021) (quoting *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 575 (E.D.N.Y. 2011)). OEC has not identified what relevant information remains uncovered regarding the relationship between Rad and Organic after receiving the Bognar Declaration. *See* Bognar Decl. ¶¶ 6-7; *see also* Section I.A.2, *supra*. Thus, the Court, in its discretion, declines OEC's request for jurisdictional discovery that would allow OEC "to engage in an unfounded fishing expedition for jurisdictional facts." *Applied Rsch. Invs., LLC v. Lin*, No. 22-cv-07100 (VSB), 2025 WL 949573, at *3 (S.D.N.Y. Mar. 28, 2025) (quoting *Langenberg v. Sofair*, No. 03-cv-08339 (KMK), 2006 WL 2628348, at *6-7 (S.D.N.Y. Sept. 11, 2006)); *accord D/S Norden A/S v. CHS de Paraguay, SRL*, No. 16-cv-02274 (LTS), 2017 WL 473913, at

*4 (S.D.N.Y. Feb. 3, 2017) (declining request for jurisdictional discovery where plaintiff "has not alleged any facts that would support its theory of personal jurisdiction based on agency, and such discovery would merely be a fishing expedition for a jurisdictional basis" (quotation marks and citation omitted)).

## III. Plaintiff's Request for Leave to Amend

Finally, OEC requests leave to file a second amended complaint pursuant to Rule 15(a)(2) to "add allegations addressing any legal insufficiencies which the Court may identify." Opp. at 24-25. Rule 15(a)(2) provides that, once amendment as of right is no longer available, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and directs the Court to "freely give [such] leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Nonetheless, 'it is within the sound discretion of the district court to grant or deny leave to amend,' and 'a district court may properly deny leave when amendment would be futile.'" *Veras v. N.Y.C. Dep't of Educ.*, No. 22-cv-00056 (JLR) (SN), 2024 WL 3446498, at *8 (S.D.N.Y. July 17, 2024) (first quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018); and then quoting *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999)).

The Court denies OEC's request for leave to file a second amended complaint. "[OEC] has not stated, nor can this [C]ourt foresee, how a[ second] amended complaint would overcome the jurisdictional defects present here. Accordingly, it would be futile for [OEC] to amend [its] complaint, and [its] request is therefore denied." *Donovan v. Gober*, 5 F. Supp. 2d 142, 150 (W.D.N.Y. 1998); *see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-mdl-02262 (NRB), 2019 WL 1331830, at *6 (S.D.N.Y. Mar. 25, 2019) ("A motion to amend will be denied if the amended complaint does not provide 'any basis to demonstrate that the district court would have [ ] personal jurisdiction' over a defendant." (alteration in original) (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010))); *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107

(2d Cir. 2022) (affirming denial of leave to amend because "a court need not always allow a party to replead simply because it asked" and "denial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured").

**CONCLUSION**

For the foregoing reasons, Plaintiff's request for jurisdictional discovery is DENIED. Defendant's motion to dismiss under Rule 12(b)(2) is GRANTED, and Plaintiff's claims against Defendant are DISMISSED without prejudice. Plaintiff's request for leave to amend is DENIED as futile in light of the Amended Verified Complaint's jurisdictional defects.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 14 and CLOSE the case.

Dated: October 26, 2026
New York, New York

SO ORDERED.

Jennifer Rochon
JENNIFER L. ROCHON
United States District Judge